1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

CORRINA M.,

9

Plaintiff,

CASE NO. C20-5058-MAT

10

v.

11

ANDREW M. SAUL,
Commissioner of Social Security,

ORDER  RE: SOCIAL SECURITY
DISABILITY APPEAL

12

Defendant.

13
14

Plaintiff proceeds through counsel in her appeal of a final decision of the Commissioner of

15

the Social Security Administration (Commissioner).   The Commissioner denied plaintiff's

16

application for Disability Insurance Benefits (DIB) after a hearing before an Administrative Law

17

Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all

18

memoranda, this matter is AFFIRMED.

19

**FACTS AND PROCEDURAL HISTORY**

20

Plaintiff was born on XXXX, 1964.[1]   She has a Masters Degree in Business

21

Administration, and past relevant work as a Management Analyst and Legal Assistant.  (AR 44,

22
23

[1] Dates of birth must be redacted to the year.  Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

ORDER
PAGE - 1

47, 777.)

Plaintiff filed a DIB application on November 7, 2014, alleging disability beginning June 16, 2014.  (AR 150.)  The application was denied initially and on reconsideration.  After a June 27, 2016 hearing (AR 40-70) and an unfavorable decision (AR 17-39), the case was appealed to this Court and remanded for further consideration (AR 851-62).  ALJ Joanne E. Dantonio held a hearing on August 15, 2019, taking testimony from plaintiff and a vocational expert (VE).  (AR 786-815.)  At hearing, plaintiff amended the alleged onset date to November 26, 2014, the date she stopped working.  (AR 800.)  On October 28, 2019, the ALJ issued a partially favorable decision.  (AR 762-80.)  Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).  At step one, it must be determined whether the claimant is gainfully employed.  The ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date.  At step two, it must be determined whether a claimant suffers from a severe impairment.  The ALJ found severe:  major depressive disorder (MDD) in partial remission versus adjustment disorder with anxiety and depression, post-traumatic stress disorder (PTSD), and fibromyalgia.  Step three asks whether a claimant's impairments meet or equal a listed impairment.  The ALJ found plaintiff's impairments did not meet or equal a listing.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has

ORDER
PAGE - 2

demonstrated an inability to perform past relevant work.  If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy.

The ALJ found plaintiff able to perform light work as defined in 20 C.F.R. § 404.1567(b), within the following parameters: she can lift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk and sit for six hours in an eight-hour workday; should not climb ladders, ropes, and scaffolds; can perform simple, routine tasks that require less than occasional contact with supervisors; can have occasional contact with co-workers that does not require teamwork and no contact with the public; should not be subject to fast-paced production demands; can tolerate less than occasional exposure to changes in tasks and should not be required to exercise judgment; and is limited to work in a low stress environment.  With this RFC, plaintiff was unable to perform past work since November 26, 2014.  However, because plaintiff's age category changed to "an individual of advanced age" on November 14, 2018, 20 C.F.R. § 404.1563, the ALJ permissibly applied the age category non-mechanically and found plaintiff's established disability onset date to be November 14, 2018.  The ALJ further found that, prior to that date and at step five, plaintiff could perform jobs existing in significant numbers in the national economy, such as Mail Room Clerk, Courier, and Office Helper.  She found plaintiff not disabled prior to November 14, 2018, but disabled on that date and continuing thereafter.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole.  *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  *Accord Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported

by substantial evidence in the administrative record or is based on legal error.")  Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff appeals the non-favorable portion of the ALJ's decision, arguing she erred in assessing opinions of Thomas Patamia, M.D.  She requests remand for further findings.  The Commissioner argues the decision is supported by substantial evidence and should be affirmed.

Medical Opinions

In general, more weight should be given to the opinion of a treating doctor than to a non-treating doctor, and more weight to the opinion of an examining doctor than to a non-examining doctor.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).[2]  Where the record contains contradictory opinions, as in this case, the ALJ may not reject a treating or examining doctor's opinion without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing."  *Id*. at 830-31 (quoted source omitted).

The record contains some eight different statements/opinions from treating psychiatrist Thomas Patamia, M.D., all offered in response to requests from or related to plaintiff's employment with Seattle City Light.  The ALJ noted a January 2015 statement did not explain why plaintiff could not perform any work from January to March 2015.  (AR 775 (citing AR 738).)  A February 1, 2015 statement did not provide functional limitations and is dated less than twelve

---

[2] Because plaintiff filed an application prior to March 27, 2017, the regulations set forth in 20 C.F.R. § 404.1527 apply to the ALJ's consideration of medical opinions.

ORDER
PAGE - 4

months after the alleged onset date.  (*Id*. (citing AR 334-36).)  An August 10, 2015 statement

identified depression, panic attacks, chronic fatigue, insomnia, and pain, and central sensitivity

syndrome since April 2015 and recommended psychotherapy, but did not include any functional

limitations.  (*Id*. (citing AR 721).)  On February 19, 2015, Dr. Patamia opined plaintiff would be

able to work a reduced schedule, four hours a day, three days a week, from March to June 2015.

(AR 775-76 (citing AR 736-37).)  In another document, Dr. Patamia suggested plaintiff "would

have still been working a reduced schedule beginning July 2015, but that statement is dated May

8, 2015, less than twelve months beyond the alleged onset date, so it is mere conjecture as to the

claimant's conditions and limitations more than a month in the future."  (AR 776 (citing AR 674).)

While plaintiff does not take issue with the above-described analysis, she does aver error in relation

to opinions from Dr. Patamia dated in June 2015, January 2016, and February 2016.

A.    June 2015 Opinion

On June 10, 2015, Dr. Patamia completed a form seeking further information on plaintiff's

requests for reasonable accommodation. (AR 721-31.)  He indicated plaintiff had an impairment

affecting the major life activities of thinking, interacting with others, sleeping, and concentrating

and likely to last six months. (AR 724.) The form provided a "Summary of Essential Functions of

[Plaintiff's] Job as a Business Unit Analyst/NERC Compliance and Budget", including "Full-

Time, M-F, 40 hours per week in an office setting" and a number of more specific tasks, and asked

Dr. Patamia to list the essential functions plaintiff could not perform.  (AR 725.)  He answered:

"Full time[.]  Training managers[.] Collaborate with personnel, administer meetings[.]"  (*Id*.)  He

clarified he based a previous recommendation of assignment to a "vacant position in her same job

classification" on plaintiff's request, which he supported to help with general mental health

recovery, but for which there was no clear medical necessity.  (AR 726.)  Finally, when asked to

describe "all medical restrictions needed", Dr. Patamia wrote:  "Low stimulation environment. Supportive management style (non-authoritarian, non-confrontational)."  (*Id.*)

The ALJ construed this opinion to satisfy the durational requirement for a disability in that it was dated around seven months after the alleged onset date and reflected an opinion of work-related limitations for thirteen months total.  (AR 776.)  "However, the only real limitations [Dr. Patamia] provided were a low stimulation environment and a supportive, non-authoritarian management-style."  (*Id.*)  The ALJ found this statement to suggest plaintiff could perform work even during the thirteen-month period within those parameters.  Noting Dr. Patamia's status as a treating doctor and mental health specialist, the ALJ afforded significant weight to this opinion and incorporated it into the RFC:  "Specifically, the above [RFC] limits the claimant to performing only simple, routine tasks, which would provide for a low stimulation environment[,]" and "the claimant should have less than occasional contact with supervisors, which means she would not be negatively affected even if she did not like their supervisory style."  (*Id.*)

The ALJ did not "broadly" read the statement that plaintiff could not work full-time and found it referred to plaintiff's past work, "i.e., Dr. Patamia's responses on this form are in response to whether the claimant is able to perform her past work as an analyst."  (AR 777.)  She found this consistent with her own finding of plaintiff's inability to perform past relevant work, and concluded it was "not meant to opine" plaintiff was "unable to perform any work on a full time basis."  (*Id.*)  The ALJ also found an alleged inability to work full time generally "inconsistent with Dr. Patamia's own notes showing improvement after leaving her prior workplace and significantly decreased use of Lorazepam, as well as reports of decreased stress due to resolution of certain situational stressors."  (*Id.* (citing AR 377, 438, 1179).)  She found it inconsistent with Dr. Patamia's notes showing plaintiff is stable and no longer needed behavioral health specialty

ORDER
PAGE - 6

1    services.  (*Id.* (citing AR 1182).)  The ALJ concluded the opinion of an inability to work full time

2    "is strictly in reference to her past work and gives this opinion significant weight."  (*Id.*)

3          Plaintiff argues the ALJ's reading of the opinion regarding full-time work is not supported

4    by substantial evidence given Dr. Patamia's February 2016 opinion that plaintiff was "still able to

5    perform some type of work" and "likely will need reduced hours, more frequent breaks" in

6    performing such work.  (AR 689-90.)  However, the ALJ is responsible for assessing the medical

7    evidence and resolving any conflicts or ambiguities in the record.  *See Treichler v. Comm'r of Soc.*

8    *Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014); *Carmickle v. Comm'r of SSA*, 533 F.3d 1155,

9    1164 (9th Cir. 2008).  The ALJ's interpretation of Dr. Patamia's June 2015 opinion as referring

10   specifically to plaintiff's job as an analyst and not broadly to any work on a full-time basis is

11   rational and supported by both a plain reading of the report and the record as a whole.  *See Morgan*

12   *v. Commissioner of the SSA*, 169 F.3d 595, 599 (9th Cir. 1999) ( "Where the evidence is susceptible

13   to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."); *Tackett*

14   *v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (when evidence reasonably supports either

15   confirming or reversing the ALJ's decision, the Court may not substitute its judgment for that of

16   the ALJ).  *See also Shaibi v. Berryhill*, 883 F.3d 1102, 1108 (9th Cir. 2018)  (that the ALJ "*could*

17   *have come to a different conclusion*" in interpreting the record, does not suffice to demonstrate

18   error) (emphasis in original).

19          Plaintiff also denies the record supports a finding of inconsistency between a limitation to

20   part-time work and Dr. Patamia's own notes.  Specifically, a March 2015 treatment note cited by

21   the ALJ includes plaintiff's report she "remains unable to face people and situations that activate

22   her" and was "still having panic acute anxiety attacks daily" and "almost daily", while "[o]verall,

23   the severity of these attacks are less."  (AR 439.)  The October 2015 note cited describes plaintiff's

ORDER
PAGE - 7

PTSD and depression as "stable and fixed, some response to current treatments but now plateaued or worsening." (AR 377.)   In addition, a July 2018 note contained screening questionnaire responses indicating unchanged depression, slightly improved anxiety, and improved PTSD, the opinion plaintiff was "stable", and a recommendation she "maintain on current treatments."  (AR 1180-81.)  Plaintiff, finally, states the evidence shows she was being transferred to her primary care physician to continue the same treatment (AR 1182-83), and as necessitated by Dr. Patamia's departure from Kaiser Permanente (AR 1179).

Again, however, the ALJ's interpretation of the record was rational and has the support of substantial evidence.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (ALJ may reject an opinion as inconsistent with the medical record); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (ALJ may reject an opinion due to discrepancy or contradiction with the doctor's own notes or observations).  The March 2015 treatment note also reflects plaintiff's report of "'much better'" anxiety and her life "'manageable' with reduced responsibilities and being away from a work environment that she perceived as unsafe and threatening", as well as Dr. Patamia's assessment of "reduced anxiety with reduced stress from being on leave" and improving depression.  (AR 439, 441.)   In October 2015, with PTSD and depression stable and fixed but plateaued or worsening, plaintiff and Dr. Patamia agreed on a plan to adjust plaintiff's medication and therapy approach.  (AR 377.)  The July 2018 record reflects the success of those efforts:

> [Last visit] June 2017. Received letter of my departure and here for final visit. Has been managing her depression and anxiety, and has been stable over past year with medications and we [sic] good self care and keeping good boundaries with relationships and responsibilities. Continues to have chronic pain, nausea, headaches, weakness and fatigue on a daily basis secondary to fibromyalgia. Occasionally PTSD symptoms get triggered. Triggered in part by interactions with her parents. Rare use of lorazepam when traveling or when acutely triggered. Infrequent use [a few times per month.]

> Typically able to manage acute stress behaviorally and with grounding skills. Also, with healthy diet. 'I am choosing health [sic] living.' No longer engaged in therapy since February 2018.

(AR 1179.)  He also assessed plaintiff as "stable with current treatment" and, following "discussions of risks and benefits and in shared decision involving the patient's goals and concerns, and with my departure from [Kaiser Permanente], we agreed she can follow up in primary care moving forward and maintain on current treatments."  (AR 1181.)  He would inform the primary care provider "you are stable and no longer needing specialty mental health, and can be maintained on current medications and follow up once yearly in primary care."  (AR 1182.)

A review of the ALJ's earlier, detailed description of the medical record and her assessment of plaintiff's symptom testimony provides further support for the ALJ's conclusion regarding improvement.  (*See* AR 769-72.)  Plaintiff's reliance on the July 2018 screening questionnaires is misplaced given that they revealed only mild to moderate depression, no more than mild anxiety, and no indication of probable PTSD.  (*See* AR 771, 1180.)[3]  Plaintiff thus does not identify error in the ALJ's consideration of Dr. Patamia's June 2015 opinion.

B.   January 2016 Opinion

On January 14, 2016, Dr. Patamia responded to a Seattle City Light request for additional information.  (AR 707-17.)  He indicated plaintiff's PTSD and depression affected her ability to walk, speak, think, interact with others, sleep, work, and concentrate, and substantially limited her ability to work as follows:  "PTSD symptoms (avoidance, hyperarousal, panic attacks) and impaired thinking/decision making interfere with normal interpersonal interactions in workplace."

---

[3] *See also* https://www.ncbi.nlm.nih.Gov/pmc/articles/PMC1495268/; https://www.tbh.org/sites/default/files/Generalized_Anxiety_Disorder_Screener_GAD7.pdf;  https://www.ptsd.va.gov/professional/assessment/adult-sr/ptsd-checklist.asp).

1    (AR 708.)   The impairment was permanent.   Her ability to maintain regular attendance was

2    "[l]ikely no if PTSD and depression symptoms are triggered and activated in work setting."   (AR

3    709.)   Her ability to perform the essential functions of the analyst position was "[l]ikely no"

4    because her symptoms would   interfere with her ability to perform:   "Quantity of work[.]

5    [Attention] to task[.]   Initiation of work/motivation[.]   Distractibility[.]   Adapting to change[.]

6    Planning/organizing[.]"   (*Id.*)   Medication and psychotherapies "can help", but plaintiff could not

7    perform "this job" permanently.   (AR 710-11.)

8         The ALJ found this statement similar to one completed in January 2015 "in that Dr. Patamia

9    stated the claimant could not perform essential job functions, but without setting forth any specific

10   function-by-function work-related limitations."   (AR 776 (citing AR 708-10).)   She found the

11   opinion "merely speculative" and "not useful" in determining plaintiff's conditions and

12   limitations, appearing "to be focused on whether the claimant is able to return to her past work",

13   and not analyzing "whether she is able to pursue other work."   (*Id.*)   The ALJ also found both this

14   and the January 2015 opinion to address "whether the claimant can work generally, which is an

15   issue reserved to the Commissioner of Social Security, which in turn means these opinions are not

16   entitled to controlling weight or special significance."   (*Id.* (citing 20 C.F.R. § 404.1527(e),

17   416.927(e), and Social Security Ruling (SSR) 96-5p).)   The ALJ additionally found the opinion

18   inconsistent with Dr. Patamia's later notes showing he found plaintiff stable and no longer in need

19   of behavioral health specialty services.   (*Id.* (citing AR 1182).)   Given its "limited usefulness" and

20   inconsistency with Dr. Patamia's own treatment notes, the ALJ gave the opinion no weight.

21        Plaintiff rejects the depiction of this opinion as general, addressing an issue reserved to the

22   Commissioner, or failing to set forth specific function-by-by function limitations.   She points to

23   specific functional limitations of symptoms that would interfere with normal interpersonal

ORDER
PAGE - 10

1   interactions and likely inability to maintain attendance, and asserts that neither those limitations,

2   nor the opinion of her permanent impairment addresses issues reserved to the Commissioner.

3   Plaintiff also again denies the alleged inconsistency with her later discharge from treatment.

4       The ALJ rationally construed and properly rejected this opinion as speculative, failing to

5   provide a specific function-by-function analysis, and otherwise lacking utility. *See*, *e.g.*, *Ford v.*

6   *Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (in finding descriptions of "'limited' or 'fair'" ability to

7   perform in the workplace "not useful" because they did not specify functional limits, the ALJ could

8   reasonably conclude the "characterizations were inadequate for determining RFC."); *Turner v.*

9   *Comm'r of Social Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (where a doctor does not

10   assign any specific limitations or opinions in relation to an ability to work, the ALJ need not

11   provide reasons for rejecting the report because the ALJ is not rejecting any of the report's

12   conclusions); *Morgan* 169 F.3d at 601 (doctor's reports did not show how a claimant's "symptoms

13   translate into specific functional deficits which preclude work activity.")  Dr. Patamia did not, for

14   example, opine as to the extent or explain the ways in which plaintiff's impairments would

15   interfere with interpersonal interactions, or how likely it would be that her symptoms would be

16   triggered, activated, and impact her ability to maintain attendance.  The ALJ, in contrast, identified

17   specific limitations to simple, routine tasks that require less than occasional contact with

18   supervisors, only occasional contact with co-workers not requiring teamwork or contact with the

19   public, no fast-paced production demands, less than occasional exposure to changes in tasks, no

20   work requiring the exercise of judgment, and work only in a low stress environment.  (AR 767.)

21   The ALJ also reasonably construed the January 2016 opinion as focused on plaintiff's past job as

22   an analyst, not addressing an ability to pursue other work, and inconsistent with later treatment

23   notes showing plaintiff as stable and no longer in need of behavioral health specialty services.

The ALJ did not, on the other hand, support the conclusion the January 2016 report addressed an opinion reserved to the Commissioner.  In the January 2015 statement, Dr. Patamia checked a box stating "[e]mployee is unable to perform all work at this time[.]"  (AR 738.)  In contrast, the January 2016 opinion focuses specifically on plaintiff's analyst job and does not address an ability to perform other work.  This opinion is not reasonably construed as intruding on the Commissioner's ultimate determination of a claimant's inability to work.  *See* 20 C.F.R. § 404.1527(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.").  However, rather than identifying this reason as a basis for rejecting the opinion, the ALJ clarified such opinions were "not entitled to controlling weight or special significance[.]"  (AR 776.)  Further, because the ALJ provided other specific and legitimate reasons for rejecting the opinion, this aspect of the ALJ's analysis is at best harmless error.  *Carmickle*, 533 F.3d at 1162-63.

C.    <u>February 2016 Opinion</u>

On February 1, 2016, Seattle City Light sought further clarification from Dr. Patamia.  (AR 692-94.)  First, noting Dr. Patamia's January 14, 2016 opinion plaintiff could not perform the analyst job ("the position in which this individual is employed") permanently, the form asked whether plaintiff was "still able to work", and Dr. Patamia checked the box stating:  "Yes, the patient is still able to perform some type of work (as elaborated in answer to Question 2)."  (AR 693.)  Second, the form asked what type of work plaintiff could perform and for a description of any work restrictions, to which Dr. Patamia responded:  "Patient potentially, if PTSD & major depression more successfully treated, could work in some capacity that would not involve high emotional intensity or challenging interpersonal interactions with public and/or superiors."  (AR 694.)  He thereafter listed the following "[l]ikely needed accommodations": (1) "Quiet, low noise,

ORDER
PAGE - 12

low stimulation work environment"; (2) "Supervisors trained & sensitive to managing someone with mental illness disability (so management sensitivity training)"; (3) "Likely will need reduced hours, more frequent breaks"; and (4) "Regular ongoing support for maintaining mental stability (so regular time off to attend ongoing mental illness appointments on an ongoing basis[.]" (*Id.*)

The ALJ did not address this report. Plaintiff avers error in the failure to address the four "likely needed accommodations." (*Id.*) She asserts the failure to discuss and weigh this medical opinion violates this Court's prior remand order directing the ALJ to reconsider all of Dr. Patamia's opinions (AR 858), and runs afoul of Ninth Circuit law, *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 n.10 (9th Cir. 2007) ("Of course, an ALJ cannot avoid these requirements simply by not mentioning the treating physician's opinion and making findings contrary to it."; noting ALJ only briefly mentioned one doctor, but did not mention the opinion the claimant was fully disabled, and did not even acknowledge another doctor) (citing *Embrey v. Bowen*, 849 F.2d 418, 422 n.3 (9th Cir. 1988) ("The ALJ must either accept the opinions of [claimant's] treating physicians or give specific and legitimate reasons for rejecting them.")) She avers harm given the failure to include the limitations in the RFC. The Commissioner maintains the error was harmless.

As a general principle, an ALJ's error may be deemed harmless where it is "'inconsequential to the ultimate nondisability determination.'" *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id.* In *Marsh v. Colvin*, 792 F.3d 1170, 1172-73 (9th Cir. 2015), the Ninth Circuit confirmed a harmless error analysis applies in the context of an ALJ's failure to discuss a treating doctor's opinion. The Court noted its prior holding that errors are harmless if inconsequential to the ultimate determination and that "'a reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable

ALJ, when fully crediting the testimony, could have reached a different disability determination.'" *Id.* at 1173 (quoting *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006)). The Court also noted its more recent cautioning: "'[W]here the circumstances of the case show a substantial likelihood of prejudice, remand is appropriate so that the agency can decide whether re-consideration is necessary. By contrast, where harmlessness is clear and not a borderline question, remand for reconsideration is not appropriate.'" *Id.* (quoting *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011)).

In *Marsh*, the Ninth Circuit found it could not confidently conclude an ALJ's error was harmless where the ALJ "no where mentioned" a treating physician, his records, or his opinion a condition rendered a claimant "'pretty much nonfunctional[.]'" *Id.* at 1171, 1173.  In this case, the ALJ discussed Dr. Patamia's treatment records and assessed seven of his medical statements/ opinions.  (AR 769-77.)  For the reasons set forth below, the Court finds the failure to address Dr. Patamia's eighth and final medical opinion harmless error.

In the February 2016 opinion, Dr. Patamia clarified plaintiff could perform some type of work if her PTSD and depression were more successfully treated and the work did not involve high emotional intensity or challenging interpersonal interactions with the public or superiors. (AR 693-94.)  The ALJ found the evidence to show successful treatment of plaintiff's PTSD and depression and accounted for these limitations with restrictions to simple, routine tasks requiring less than occasional contact with supervisors, only occasional contact with co-workers not requiring teamwork and no contact with the public, no fast-paced production demands, less than occasional exposure to changes in tasks, no work requiring the exercise of judgment, and work only in a low stress environment.  (AR 767.)

The RFC does not include the "likely needed accommodations" of a "Quiet, low noise, low

1    stimulation work environment", supervisors who have undergone management sensitivity training

2    regarding mental illness, reduced hours and more frequent breaks, or regular time off to attend

3    mental illness appointments.  (AR 694.)  However, the ALJ found the opinion of "likely" inabilities

4    offered by Dr. Patamia only two weeks earlier merely speculative and lacking in utility.  (AR 709,

5    776.)  She also found plaintiff's depression and PTSD, the impairments associated with the likely

6    needed accommodations, had stabilized and no longer required specialized treatment, and provided

7    a detailed analysis of the medical evidence and plaintiff's testimony in support of that conclusion.

8    (*See* AR 769-73.)  For instance, in one portion of that analysis, the ALJ explained:

9               . . . Prior to going on medical leave, the claimant said she
        tried to reduce her work load, but this did not improve her
10       symptoms.  She stated her symptoms did not improve until she
        stopped working altogether.  This suggests it is not working
11       generally that was the claimant's problem, but working for that
        particular employer.  The claimant's treatment records are generally
12       consistent with this notion.  After the alleged onset date, the claimant
        did not initially improve, but in fact worsened.   However, she
13       continued to work at her prior employer for the first six months of
        the period at issue.  Once she stopped working there completely,
14       around December 2014, she improved fairly quickly.  The claimant
        was on medication management and she was seeing a therapist.
15       While these did not seem to help her prior to the time she stopped
        working for the City of Seattle, within just a few months, she
16       reported doing better.  In March 2015, the claimant stated her sleep
        had improved to the point that she had not needed medication in over
17       a month.  She said her sleep had improved due to reduced daily
        stress.  She stated she was not having night terrors.  She reported life
18       was manageable since she was away from a work environment that
        she perceived as unsafe and threatening.  . . .

19              . . . She stated she was successfully handling stressors, which
20       included managing her household and childcare responsibilities. . .
        [and that] these activities had increased her sense of safety and
21       security, and provided healing for her.  She stated she was able to
        get along with others in the community, suggesting she may have
22       also been able to get along with less hostile supervisors.  The fact
        that the claimant was able to take care of these responsibilities
23       strongly suggests she could perform at least simple, routine work on

ORDER
PAGE - 15

1    a regular and continuing basis. . . .

2              . . . By November 2015, less than 12 months after the
     claimant stopped working for the City of Seattle, she said she had
3    good news to report.  She felt that Cymbalta was really treating her
     fibromyalgia symptoms.  She stated she was successfully handing
4    her current stressors, which included managing her household and
     childcare responsibilities.  While she stated she did not feel she
5    could manage in a work setting where there would be direct
     authority, this is likely because the claimant viewed a work setting
6    through the prism of her prior hostile work environment.  It is
     unlikely that she considered whether she might be able to work if
7    the work environment was less hostile, with more simple, routine
     tasks, and less strict management.  The state agency psychological
8    consultants, the consultative examiner, and one of the claimant's
     treating physicians have all suggested that the claimant would have
9    been able to perform a full time work schedule, albeit with some
     adaptive and social functioning limitations, as set forth in the [RFC].
10   On the other hand, no source, treating or otherwise, has suggested
     function-by-function work-related limitations that would have
11   precluded a full time work schedule for more than 12 continuous
     months.

12

13   (AR 772-73.)  The ALJ also limited this determination to a closed period of time dated between

14   the November 26, 2014 onset date and the determination of disability as of November 14, 2018.

15           Considering the ALJ's decision and the record as a whole, the Court can confidently

16   conclude consideration of the "likely needed accommodations" would not likely have affected the

17   ALJ's determination as to the period of time prior to November 14, 2018.  *See, e.g.*, *Kelly v. Colvin*,

18   No. 14-35332, 2016 U.S. App. LEXIS 17490 at *2-3 (9th Cir. Sep. 26, 2016) (finding errors in

19   failure to address two doctors' opinions were not likely to affect the ALJ's decision where the ALJ

20   did discuss and properly discount opinions of two other doctors that the claimant had more

21   substantial limitations than those incorporated into the RFC); *Pamela W. v. Saul*, C19-0611, 2020

22   U.S. Dist. LEXIS 66241 at *27-29 (D. Or. Apr. 15, 2020) (finding the failure to mention a doctor's

23   opinion a claimant had been disabled for four years not likely to affect the ALJ's decision where

ORDER
PAGE - 16

the ALJ had "discounted a nearly identical opinion" plaintiff had not challenged and for at least one reason the Court found valid); *Cox v. Berryhill*, C17-0544, 2018 U.S. Dist. LEXIS 86027 at *53-56 (C.D. Cal. May 22, 2018) (finding any error in failure to expressly discuss a doctor's assessment of functional limitations harmless where ALJ discussed and provided reasoning for rejecting the doctor's treatment notes, and provided sufficient reasons for addressing similar limitations assessed by two other doctors).  The ALJ's failure to address the February 2016 opinion was harmless error.

## CONCLUSION

For the reasons set forth above, this matter is AFFIRMED.

DATED this <u>17th</u> day of September, 2020.

Mary Alice Theiler
United States Magistrate Judge

ORDER
PAGE - 17